**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
W. Blair Castle (SBN 354085)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797
e-Mail: kevin@kjclawgroup.com

Attorneys for Plaintiff
*Benjamin Spreng*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN SPRENG, individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>FITJOY, INC. d/b/a FITJOY FOODS, a Delaware corporation;<br><br>　　　Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200,** *et seq.***; and**<br>2. **Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750,** *et seq.*<br><br>Filed Concurrently:<br><br>1. Plaintiff's CLRA Venue Affidavit<br><br>(JURY TRIAL DEMANDED) |

CLASS ACTION COMPLAINT

Plaintiff Benjamin Spreng ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1. Defendant FitJoy, Inc. d/b/a FitJoy Foods ("FitJoy" or "Defendant") manufactures and sells pretzels (the "Products"). To increase profits at the expense of consumers and fair competition, Defendant deceptively sells the Product in oversized packaging that does not reasonably inform consumers that they are mostly buying air. In short, Defendant dupes consumers into paying extra for empty space.

2. Several state and federal courts have found that cases involving materially identical claims are actionable and meritorious. *See, e.g.*, *Reyes v. Just Born, Inc.*, 729 F.Supp.3d 971, 973 (C.D. Cal. Apr. 8, 2024) ("The Court finds almost absurd the assumption that even a math major could rapidly (in a candy aisle of a supermarket) multiply the number of servings to come up with a total candy count *and then estimate the three-dimensional volume of each piece based on an image* to calculate the total ratio of candy volume to box volume. The fact remains that the box is almost half empty. Barring a consumer's exceptional skill in the party game of guess-how-many-marbles-are-in-the-bowl, it is difficult to imagine how a consumer could generate an accurate estimate of how much candy she is buying.") (emphasis in original); *Cody v. Conagra Brands, Inc.*, Case No. 2:24-cv-08690-DSF-MAAx, 2025 WL 984404 (C.D. Cal. Mar. 31, 2025) ("[The plaintiff] also alleges that the Product's package does not perform a specific function that requires slack fill, is not reusable, and does not provide any significant value to the Product . . . The Court finds that Cody has plausibly alleged that the Product

contains nonfunctional slack fill.").

3.    The below pictures illustrate the deceptive nature of the packaging and the substantial non-functional slack fill inside the package. In summary, actual pretzels only occupy less than 33% of the exterior space represented by the package (if that):





-3-

CLASS ACTION COMPLAINT



## THE PARTIES

4.      Plaintiff Benjamin Spreng is a citizen of the State of California and resident of Santa Clara County. On September 2, 2025, Plaintiff purchased Defendant's "Tangy Dijon Mustard Grain Free Pretzels" and "Sea Salt Grain Free Pretzels," only to discover (after his purchase) that the package was over 50% empty.

5.      In making the purchase, Plaintiff relied upon the opaque packaging, including the size of the package and product label, which was designed to encourage consumers like Plaintiff to purchase the Products. Plaintiff understood the size of the package and product label to indicate that the amount of product contained therein was commensurate with the size of the package, and would not have purchased the Products, or would not have paid a price premium for the Product, had plaintiff known that the size of the package and product label were

-4-

false and misleading. Plaintiff intends to purchase the Products in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product is accurate and lawful, at which point Plaintiff will reasonably be able to rely upon Defendant's representations about the Product.

6.    Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant FitJoy Brands Inc. is a Delaware corporation with its principal place of business in Austin, Texas.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

8.    The Northern District of California has specific personal jurisdiction over FitJoy. Specific jurisdiction over a non-resident defendant exists where: (1) "[t]he non-resident defendant . . . purposefully direct[s] [it]s activities or consummate[s] some transaction with the forum or resident thereof; or perform[s] some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) the claim is one that "arises out of or relates to" the defendant's activities in the forum state; and (3) the exercise of jurisdiction comports with "fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff need only establish the first two prongs, while it is the defendant's burden to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

9.    ***Purposeful Availment.*** Under the first prong of the three-part test,

CLASS ACTION COMPLAINT

"purposeful availment" includes both purposeful availment and purposeful direction, which are two distinct concepts. *Id.* Where a case sounds in tort, as here, courts employ the purposeful direction test. Purposeful direction requires the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citing *Schwarzenegger*, 374 F.3d at 802). On information and belief, FitJoy regularly sells and ships its products to customers in California, including Plaintiff, who purchased the Product from a grocery store in Santa Clara County, California. In addition, because Defendant does a substantial amount of business in California, it is knowingly employing a false marketing scheme directed at and harming California residents, including Plaintiff.

10.    ***Claim Arising Out of Action in the Forum Prong.*** Under the second prong of the three-part specific jurisdiction test, personal jurisdiction exists where, as here, the claim "arises out of or relates to" the defendant's activities in the forum state. Courts in the Ninth Circuit use a "but for" test to determine whether the claim "arises out of" the nonresident's forum-related activities. In other words, the test is satisfied if the plaintiff would not have suffered loss "but for" defendant's activities. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, FitJoy's contact with the forum—knowingly employing a false marketing scheme directed at California residents—is the basis of its violations of various false advertising statutes. But for FitJoy's contact with the forum, Plaintiff (and the thousands of other individuals who purchased FitJoy's deceptively advertised products) would not have suffered harm.

11.    ***Venue.*** Venue is proper in the U.S. District Court for the Northern District of California pursuant to 28 U.S.C. § 1391 because FitJoy:

a) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District;

b) does substantial business within this District;

c) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## GENERAL ALLEGATIONS

12. The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13 seconds deciding whether to make an in-store purchase. This decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased. *See, e.g.*, https://www.nielsen.com/insights/2015/make-the-most-of-your-brands-20-second-window/.

13. Defendant chose a certain size package for its Products to convey to consumers that they are receiving an amount of product commensurate with the size of the package.

14. Slack-fill is the difference between the actual capacity of a package and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

15. Defendant falsely represents the quantity of product in each of the Product's opaque package. The size of each package leads reasonable consumers to believe they are purchasing a package full of product when, in reality, consumers are actually receiving significantly less than what is represented by the size of the package.

-7-

CLASS ACTION COMPLAINT

16.     Even if consumers had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity product meaningfully different from the size of the package.

17.     Prior to the point of sale, the Product's packaging does not allow for confirmation of the contents of the Product. The Product's opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" or otherwise inspect the package before opening it, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the package.

18.     The other information that Defendant provides about the quantity of product on the front and back labels of the Products does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the package itself. For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of product to be expected, such as a fill line.

19.     Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of product contained in the Products' packages that would be different from their expectation that the quantity of product is commensurate with the size of the package.

20.     Plaintiff was genuinely interested in consuming and enjoying the Product—and did so, but with disappointment that the package was mostly empty. Plaintiff would not have purchased the Product had plaintiff known that the Product contained slack-fill that serves no functional or lawful purpose, and would have

CLASS ACTION COMPLAINT

consumed the entirety of the contents if the package was filled to plaintiff's expectations.

**None of the Slack-Fill Statutory Exceptions Apply to the Product**

21.    Pursuant to 21 C.F.R. § 100.100, any opaque food package "shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." *Id.* Nonfunctional slack-fill is empty space within packaging that is filled to less than its capacity for reasons other than provided for in the enumerated slack fill exceptions.

**A.    21 C.F.R. 100.10(a)(1) — Protection of the Contents**

22.    The slack-fill in the Product's packages does not protect the contents of the packages. In fact, empty space does not protect the Product.

**B.    21 C.F.R. 100.100(a)(2) — Requirements of the Machines**

23.    The machines used to package the Products would not be affected if there was more product added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

24.    Because the packages are filled to less than half of their capacity, Defendant can increase the Product's fill level significantly without affecting how the packages are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of product actually in the package, consistent with the law.

**C.    21 C.F.R. 100.100(a)(3) — Settling During Shipping and Handling**

25.    The slack-fill present in the Product's packages is not a result of the product settling during shipping and handling. Given the Product's density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

**D.    21 C.F.R. 100.100(a)(4) — Specific Function of Package**

26.    The packages do not perform a specific function that necessitates the

-9-

CLASS ACTION COMPLAINT

slack-fill. This safe harbor would only apply if a specific function were "inherent to the nature of the food and [] clearly communicated to consumers." The packages do not perform a function that is inherent to the nature of the food. Defendant did not communicate a specific function to consumers, making this provision inapplicable.

**E.      21 C.F.R. 100.100(a)(5) — Reusable Package**

27.    The Product's packaging is not reusable or of any significant value to the Product independent of its function to hold the product. The packages are intended to be discarded immediately after the product is used.

**F.      21 C.F.R. 100.100(a)(6) — Inability to Increase Fill or Decrease Package Size**

28.    The slack-fill present in the packages does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

29.    Defendant can easily increase the quantity of product in each package (or, alternatively, decrease the size of the packages) significantly.

30.    Because none of the safe harbor provisions apply to the Product's packaging, the packages contain nonfunctional slack-fill in violation of 21 C.F.R. 100.100 and are, therefore, misleading as a matter of law.

31.    Defendant's false, deceptive, and misleading label statements are unlawful under state consumer protection and packaging laws.

32.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiff by causing Plaintiff to spend more money than Plaintiff would have otherwise spent had Plaintiff known the extent of the Product's non-functional slack-fill.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action on behalf of himself and all persons similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

All persons in the United States who purchased one or more of FitJoy's products for personal use and not for resale during the four years prior to the filing of this Complaint to the present (the "Class Period").

34.    The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

35.    In the alternative, Plaintiff seeks certification of the following class pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

All persons in the State of California who purchased one or more of FitJoy's products for personal use and not for resale during the four years prior to the filing of this Complaint to the present.

36.    **Numerosity**. The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class. The precise number of Class members is unknown to Plaintiff.

37.    **Typicality**. Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendants' course of conduct as described in this Complaint. All Class members have been deceived (or were likely to be deceived) by FitJoy's false and deceptive advertising scheme, as alleged in this Complaint. Plaintiff is advancing the same claims and legal theories

-11-

CLASS ACTION COMPLAINT

on behalf of himself and all Class members.

38. **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and isr counsel intend to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Class.

39. **Existence and Predominance of Common Questions of Law or Fact**. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a) Whether, during the Class Period, Defendants sold its pretzels in oversized packages filled mostly with air, thereby misleading consumers about the actual quantity of product they are purchasing.

b) Does Defendants' deceptive marketing scheme constitutes an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq*.?

c) Does Defendants' deceptive marketing scheme constitute "unfair, deceptive, untrue or misleading advertising" in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq*.?

d) Does Defendants' deceptive marketing scheme constitute false advertising in violation of the California False Advertising Law under Business & Professions Code §§ 17500, *et seq*.?

e) Whether Defendants' selling its pretzels in oversized packages

-12-

CLASS ACTION COMPLAINT

filled mostly with air are false representations.

f) Whether and when Defendants learned that its pretzels are sold in oversized packages filled mostly with air.

g) Whether Defendants had a duty to disclose to their customers that it sells pretzels in oversized packages filled mostly with air.

h) To what extent did Defendants' conduct cause, and continue to cause, harm to the Class?

i) Whether the members of the Class are entitled to damages and/or restitution.

j) What type of injunctive relief is appropriate and necessary to enjoin Defendants from continuing to engage in false or misleading advertising?

k) Whether Defendants' conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

40. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

41. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the

-13-

CLASS ACTION COMPLAINT

rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

42. **Ascertainability**. Upon information and belief, Defendants keep extensive computerized records of their sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendants have one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

43. The California Class also satisfies each of the class action requirements set forth above. The allegations set forth above with regards to the Class, therefore, apply equally to the California Class.

## CLAIMS FOR RELIEF

### First Cause of Action

**Violation of California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

**(By Plaintiff Against Defendants on Behalf of Himself and the Class)**

44. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

45. California Business and Professions Code §§ 17200 *et seq*., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair

-14-

CLASS ACTION COMPLAINT

competition," including any "unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

46. The UCL imposes strict liability. Plaintiff need not prove that FitJoy intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

**"Unlawful" Actions**

47. A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL. The violation of any law constitutes an "unlawful" business practice under the UCL.

48. Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendants have engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations, such as 21 C.F.R § 100.100; California Business & Professions Code section 17500; and California Civil Code section 1770(a)(5).

49. FitJoy's practices also violate California Business and Professions Code § 12606.2—which incorporates 21 C.F.R § 100.100—and generally prohibits the creation, formation or filling of food containers as to be misleading. Cal. Bus. & Prof. Code § 12606.2(b). "A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." *Id.* § 12606.2(c).

50. "Slack fill is the difference between the actual capacity of a container and the volume of product contained therein." *Id.* Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following: (1) protection of the contents of the package; (2) the requirements of the machines used for enclosing the contents

-15-

CLASS ACTION COMPLAINT

in the package; (3) unavoidable product settling during shipping and handling; (4) the need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that function is inherent to the nature of the food and is clearly communicated to consumers; (5) the fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is both significant in proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages; and (6) inability to increase the level of fill or to further reduce the size of the package, such as where some minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices. *Id.*

51. Here, FitJoy's pretzels contain nonfunctional slack fill for at least several reasons: (i) FitJoy's pretzels are hard and not at any serious risk of breaking, (ii) the empty space in the packaging is not to protect the pretzels, and in fact, makes it more likely the pretzels will break or sustain damage during shipping and handling, (iii) the machines used for enclosing the contents of the package have the capacity to add more content to the packages used to enclose their contents, (iv) the slack fill in the package is not due to unavoidable settling of the pretzels during shipping and handling, (v) the pretzels' package does not perform a specific function that requires slack fill, is not reusable, and does not provide any significant value to the product, and (vi) FitJoy could easily increase the quantity of pretzels pieces in the package or decrease the package size.

52. Moreover, as detailed below in the Second Claim for Relief, Defendant's conduct also violates the California Consumers Legal Remedies Act ("CLRA"). *See* Cal. Civ. Code §§ 1750, *et seq.* More specifically, Defendant

violated the CLRA's provisions prohibiting businesses from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have." Cal. Civ. Code § 1770(a)(5).

**"Unfair" Actions**

53. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

54. Here, Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in a misleading and deceptive marketing scheme by advertising and selling its pretzels in oversized packages filled mostly with air, thereby misleading consumers (including Plaintiff) about the actual quantity of product they are purchasing. Defendant's deceptive marketing practice gave consumers the false impression that its products were worth more than they actually were. Defendant's acts and practices therefore offended an established public policy, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

55. The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described in this Complaint.

**"Fraudulent" Actions**

56. A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

-17-

57. Here, members of the public are likely to be deceived by Defendant's conduct as alleged above. *See Oh v. Fresh Bellies, Inc.*, No. CV 24-5417 PSG (JPRx), 2024 WL 4500727, at *5 (C.D. Cal. Oct. 15, 2024) ("For claims based on deceptive product packaging or labeling, many courts in California have applied a 'relatively straightforward test for the application of Rule 9(b):' The 'who' is the defendant; the 'what' is the allegedly misleading packaging; the 'when' is the proposed class period during which time the packaging was deceptive; the 'where' is the packaging containing the allegedly misleading statement—or in the case of deceptive packaging, the packaging itself—and the 'how' is the plaintiff's explanation for why the packaging is misleading.") (citation omitted).

58. That test (for pleading deceptive product packaging or labeling) is easily satisfied here: the "who" is FitJoy; the misleading representation, or the "what," is the filling of its pretzels in an oversized package, which implies to the reasonable consumer that the package had more pretzels than it actually contained; the "how" is FitJoy's filling its package with a significant amount of nonfunctional slack fill; the "when" is the date Plaintiff purchased the Product; the "where" is retail stores in California; and the "why" is to induce consumers to purchase FitJoy's pretzels, to cause consumers to pay more for FitJoy's pretzels, and to take market share and profits from its competitors.

59. Plaintiff and each member of the Class suffered an injury in fact and lost money or property as a result of Defendants' unlawful, unfair, and/or fraudulent business practices, and as a result of Defendants' unfair, deceptive, untrue or misleading advertising.

60. Plaintiff, on behalf of himself and the members of the Class, seeks disgorgement of all moneys received by Defendants through the conduct described above.

61. Plaintiff, on behalf of himself and the members of the Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting

CLASS ACTION COMPLAINT

Defendant from engaging in the patterns and practices described herein, including but not limited to, putting a stop to their deceptive selling practices (selling pretzels in oversized packages).

62.    Injunctive relief is necessary to prevent future harm to consumers, including Plaintiff, who would like to purchase the products in the future.  Every day, consumers like Plaintiff are misled into believing they are purchasing a product that had more pretzels than it actually contained. Without injunctive relief, Defendant will continue to mislead consumers, and consumers will purchase products they otherwise would not have purchased because they will be unable to determine whether they are actually purchasing products with mostly air.

**Second Cause of Action**

**Violation of the California Consumers Legal Remedies Act,**

**Cal. Civ. Code §§ 1750, *et seq*.**

**(By Plaintiff Against Defendants on Behalf of Himself and the Class)**

63.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

64.    The Consumer Legal Remedies Act of 1970, Cal. Civ. Code §§ 1750, *et seq*. (the "CLRA") is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

65.    Plaintiff and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Defendant's sale of pretzels to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiff and the Class are "goods" within the

meaning of California Civil Code section 1761(a).

66. Defendant violated and continue to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of FitJoy's products:

(1) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and

(2) Advertising goods or services with the intent not to sell them as advertised.

Cal. Civ. Code §§ 1770(a)(5) & (9).

67. With regards to section 1770(a)(5), Defendant misrepresented the Product as having characteristics and quantities that it does not have, e.g., that the Product is free of nonfunctional slack-fill when it is not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and depriving Plaintiff of rights and money.

68. With regards to section 1770(a)(9), Defendant advertised and represented that their branded products contained significantly more pretzels than they actually did (given that the packages contained mostly air).

69. Pursuant to Cal. Civ. Code § 1782, on October 13, 2025, Plaintiff's counsel notified Defendant in writing (by certified mail, with return receipt request) of the particular violations of the CLRA and demanded that they correct or agree to correct the actions described in this Complaint, including by giving notice to all affected consumers.

70. Defendant failed to respond appropriately to the Plaintiff's October

-20-

CLASS ACTION COMPLAINT

13, 2025 CLRA letter, nor did they agree to rectify the problems associated with the actions described above and to give notice to all affected consumers within 30 days of the date of the written notice, as prescribed by § 1782. Therefore, Plaintiff further seeks claims for actual, consequential, punitive, and statutory damages, as well as mandatory attorneys' fees and costs, against Defendant.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Benajmin Spreng prays for relief and judgment in favor of himself and the Classes as follows:

**On the First Cause of Action for Violations of the Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

A.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.    For an award of equitable and declaratory relief.

C.    For pre- and post-judgment interest and costs of suit incurred herein.

D.    For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

E.    For such other and further relief as the Court may deem just and proper.

**On the Second Cause of Action for Violations of the Consumer Legal**

**Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)**

A.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.    For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendant to correct its deceptive and misleading advertising and selling practices.

C.    For pre- and post-judgment interest and costs of suit incurred herein.

CLASS ACTION COMPLAINT

D.    For attorneys' fees incurred herein pursuant to California Civil Code section 1780, or to the extent otherwise permitted by law.

E.    For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

DATED:  February 25, 2026        Respectfully submitted,

**KJC LAW GROUP, A.P.C.**

By: */s/ Kevin J. Cole*

Attorney for Plaintiff
*Benjamin Spreng*

-22-

CLASS ACTION COMPLAINT